UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PALMER-DONAVIN
MANUFACTURING CO.,

   Plaintiff,

                Case No. 2:14-cv-91
                JUDGE SMITH
   v.             Magistrate Judge Deavers

RHEEM SALES CO.,

   Defendant.

**OPINION AND ORDER**

   This matter is before the Court on Defendant, Rheem's, motions to dismiss. (Docs. 4 & 9). For the reasons that follow, Rheem's second motion to dismiss (Doc. 9) is **GRANTED in part** and **DENIED in part** and Rheem's first motion to dismiss (Doc. 4) is **DENIED as moot**.

       **I.  BACKGROUND AND INTRODUCTION**

   According to the allegations in the amended complaint, Plaintiff, Palmer-Donavin Manufacturing Company, is a wholesale distributor of residential building supplies including heating and cooling equipment. (Doc. 8, Amend. Compl. at ¶ 5). Defendant, Rheem Sales Company, is a manufacturer and seller of heating and cooling equipment. *Id.* at ¶ 6. At the time of the incident giving rise to this lawsuit, Palmer-Donavin and Rheem had been in business together for over 40 years – Rheem producing products and Palmer-Donavin distributing them. *Id.* at ¶ 7.

   During the over-40-year relationship, Rheem assured Palmer-Donavin that the distributor relationship would continue. *Id.* at ¶ 11. Relying upon these assurances, Palmer-Donavin took

steps to boost sales of Rheem products and focus its distribution business more tightly on Rheem. It supported Rheem's Top Tech Training and Boot Camps. *Id.* at ¶ 12, 17. It helped with Rheem's new product rollouts, commercial launches, dealer meetings, and implementation of Protech Stores. *Id.* In 2011, at Rheem's request, Palmer-Donavin discontinued distribution of a competing product line, ComfortStar, and became a single-line distributor for Rheem. *Id.* at ¶ 21. In 2011-12, at Rheem's request or with Rheem's approval, Palmer-Donavin hired a new GM for their HVAC (heating, ventilation, and air conditioning) division, enrolled its branch managers in industry-specific training, recruited additional sales personnel through a sales apprentice program, and took its entire sales team to Fort Smith, Arkansas for Rheem Master Track training. *Id.* at ¶¶ 13, 17. At the end of 2012, Palmer-Donavin, again at Rheem's request or with its approval, also added Rheem water heaters to its distribution line. *Id.* at ¶¶ 14, 17.

However, unbeknownst to Palmer-Donavin and beginning in or before 2012, Rheem was, working with Robertson Heating Supply to replace Palmer-Donavin as a distributor. *Id.* at ¶ 23. Had Palmer-Donavin known this, it would not have acquiesced in Rheem's request that it become a single-line distributor or taken any of the other actions it took to favor Rheem. *Id.* at ¶ 22. Moreover, despite knowing that it was planning to replace Palmer-Donavin, Rheem requested or approved of the actions taken by Palmer-Donavin. *Id.* at ¶¶ 11-17, 21-22, 24.

In late November 2012, Rheem, for the first time, expressed displeasure with Palmer-Donavin, by putting it on probation. *Id.* at ¶ 25. Rheem rebuffed requests by Palmer-Donavin to meet with management. *Id.* at ¶ 26. Then, on January 10, 2013, Rheem notified Palmer-Donavin that it was terminating its relationship with them effective May 11, 2013. *Id.* at ¶ 27. Because of this, Palmer-Donavin was forced to liquidate its HVAC division. *Id.* at ¶ 29.

It is not clear from the amended complaint what agreement governed most of the 40-plus-year history between these two companies (or, for that matter, if any formally existed). However, in 2007, Palmer-Donavin and Rheem executed a formal Distributor Agreement. *Id.* at ¶ 8. This agreement expired, by its own terms, in 2009 and was never (at least not in writing) extended. *Id.* at ¶¶ 9-10. However, each year Palmer-Donavin would submit a distribution plan for the following year and each year Rheem approved the same. *Id.* at ¶ 19. This is true, even for 2013, the year in which Rheem fired Palmer-Donavin as a distributor. *Id.* at ¶ 20. Specifically, in December of 2012, Rheem worked with Palmer-Donavin to develop and approve a distribution plan for 2013. *Id.* Then, on January 10, 2013, Rheem informed Palmer-Donavin that it was being fired as a distributor. *Id.* at ¶ 27.

Palmer-Donavin sues Rheem for this allegedly wrongful conduct under seven separately alleged counts/legal theories – Breach of Written Contract, Breach of Oral Contract, Detrimental Reliance/Promissory Estoppel, Equitable Estoppel, Breach of Fiduciary Duty, Fraud in the Inducement, and Negligent Misrepresentation. *Id. in passim*. Rheem moves to dismiss all as being inadequately pled except Fraud in the Inducement. (Doc. 9, D. 2d. Mot. to Dis.). The motion is fully briefed and ripe for decision.

## II. MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. Thus, a Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); Fed. R. Civ. P. 10(c).

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009) (clarifying and broadly applying the plausibility standard articulated in *Twombly*).

Several considerations guide whether a complaint meets the facial-plausibility standard. On one hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Further, the factual allegations of a pleading "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. On the other hand, a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). When making this determination, a court must construe the claim at issue in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted).

### III. DISCUSSION

Rheem's first motion to dismiss (Doc. 4) targeted only the original complaint. (Doc. 2, Compl.). As Palmer-Donavin has since filed an amended complaint (Doc. 8), Rheem's first motion is moot. The remainder of this order shall address only Rheem's second motion to dismiss. (Doc. 9, D. 2d. Mot. to Dis.).

**A.      2007-2009 Distributor Agreement**

Rheem argues that the Distributor Agreement, reached by the parties in 2007, and which, by its own terms, terminated in 2009, still controlled their conduct in 2013. (*See, e.g.*, Doc. 13,

4

D. Reply in Supp. of Dis. at 1; *see also* Doc. 8, Ex. A, Dist. Agmnt. at ¶ 19 ("This Agreement will . . . automatically terminate on Sept 12, 2009 . . .")). Under this agreement, argues Rheem, its conduct was not a breach but a proper termination. (Doc. 9, D. 2d. Mot. to Dis. at 5-16). Rheem uses this conclusion to then argue that many of the legal theories asserted by Palmer-Donavin are unavailing. *Id.* However, Rheem is mistaken in its premise.

"It is a long-established rule, and a good one, that where a contract ends but the parties continue to act according to its terms, they are deemed to have acquiesced in all of the terms of a contract." *Young v. Wash. Local Sch. Dist. Bd. of Educ.*, 619 N.E.2d 62, 64 (Ohio Ct. App. 1993); *see also, e.g.*, *Kelly v. Carthage Wheel Co.*, 57 N.E. 984, 986 (Ohio 1900); *Mun. Constr. Equip. Operators' Labor Council v. City of Cleveland*, 113 Ohio St. 3d 480, 2007-Ohio-2452, 866 N.E.2d 1065, at ¶ 22. However, at the motion to dismiss stage of a litigation, the Court must treat all the "well pleaded" nonconclusory allegations in the complaint as true. *Iqbal*, 556 U.S. at 678-79. Thus, the question is, does Palmer-Donavin allege that the parties continued to act under the terms of the 2007-2009 Agreement such that they could justly be deemed to have acquiesced in all the terms of that contract even beyond the two-year term of the agreement?

Taking the allegations as true and drawing all reasonable inferences in favor of Palmer-Donavin, the answer is "no." The 2007-2009 Agreement clearly contemplated a situation where both Rheem and Palmer-Donavin were free to have other distributor-producer relationships. That is, term 6(a) of the agreement states that Rheem is free to employ other distributors and term 3(g) makes clear (though it places certain restrictions on sales force and sales facility usage) that Palmer-Donavin may "market[] or sell[] competing products inside or outside of the Territory . . . ." (Doc. 8, Ex. A, Dist. Agmnt. at ¶¶ 3(g), 6(a)). By contrast, the amended complaint alleges that, "at Rheem's request," Palmer-Donavin discontinued its other line of

products (ComfortStar) and "became a single-line distributor totally reliant upon Rheem." (Doc. 8, Amend. Compl. at ¶ 21). Evidence adduced later in this case may confirm or dispel this allegation but, when taken as true, it shows that the parties did not "continue to act according to [the] terms" of the 2007-2009 Agreement. *Young*, 619 N.E.2d at 64. In other words, the 2007-2009 Agreement contemplated an open business relationship, but Palmer-Donavin alleges that the parties later agreed that Palmer-Donavin would be faithful solely to Rheem.

Thus, for purposes of deciding the motion to dismiss, the alleged causes of action by Palmer-Donavin are to be judged sufficient or insufficient on their own merits, not as seen through the lens of the 2007-2009 Agreement terms.[1]

**B.     Count One – Breach of Written Contract**

Breach of contract in Ohio consists of three[2] primary elements: (1) the existence of a contract; (2) breach by the defendant; and (3) performance by the plaintiff. 1 Ohio Jury Instr. CV 501.01 (2014); *see also, e.g.*, *Doner v. Snapp*, 649 N.E.2d 42, 44 (Ohio Ct. App. 1994).

Palmer-Donavin's response argues that the creation and approval of yearly distribution plans by Palmer-Donavin and Rheem constituted serial written contracts of 1-year duration each. (Doc. 12, P. Re. in Opp. to Dis. at 6; Doc. 8, Amend. Compl. at ¶¶ 19-20, 31-34). Thus, argues Palmer-Donavin, having made a distribution contract of duration 1-year to cover the year 2013, it

---

[1] The 2007-2009 Agreement contains a choice of law provision in favor of New York law. (Doc. 8, Ex. A, Dist. Agmnt. at ¶ 18). However, because the Court concludes that the agreement term expired and was not continued by the performance of the parties, the normal analysis applies:

> In diversity cases, the federal courts must apply state law "'in accordance with the then controlling decision of the highest state court.'" *United States v. Anderson County, Tenn.*, 761 F.2d 1169, 1173 (6th Cir. 1985) (quoting *Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 543 (1941)); *see Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). If the forum state's highest court has not addressed the issue, the federal court must ascertain from all available data, including the decisional law of the state's lower courts, what the state's highest court would decide if faced with the issue. *See Bailey v. V&O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985) (citing cases).

*Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001) (parallel citations omitted). This case being a diversity case, the Court shall apply Ohio law.

[2] In addition to damages which are fundamental to most any lawsuit.

6

was a breach when Rheem, among other misdeeds, terminated in May of 2013. (Doc. 12, P. Re. in Opp. to Dis. at 6; Doc. 8, Amend. Compl. at ¶ 33). Finally, Palmer-Donavin alleges that it performed in that it continued to purchase Rheem products and maintained adequate facilities to sell Rheem's products. (Doc. 8, Amend. Compl. at ¶¶ 15-16, 32).

Had Rheem attached the distribution plan to its motion to dismiss, the Court would have been permitted to review it and judge the accuracy of Plaintiff's argument. That is, "[a] plaintiff cannot avoid dismissal of a legally deficient claim by failing to attach a dispositive document to the complaint." *Allied Mech. Servs. v. Local 337 of the United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefiting Indus.*, No. 99-1494, 2000 U.S. App. LEXIS 15723, *8 (6th Cir. June 26, 2000) (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)). But, in this case, as neither party has attached the purported contract, the Court cannot go further in judging Palmer-Donavin's allegations than accepting them as truth. Accordingly, dismissal of this claim would be premature.

**C.    Count Two – Breach of Oral Contract**

In the alternative (and in case this Court, when it sees the written distribution plan, decides that it is not a written contract) Palmer-Donavin alleges that there was an oral contract between the parties. (Doc. 12, P. Re. in Opp. to Dis. at 7-8; Doc. 8, Amend. Compl. at ¶¶ 19-20, 36-39). This alleged contract, as above, is founded on the notion that yearly (and particularly in December of 2012) Rheem agreed to supply, and Palmer-Donavin agreed to purchase and distribute, heating and cooling goods for the period of a year. *Id.* This contract, alleges Palmer-Donavin, was breached when Rheem, among other misdeeds, before the year was up, terminated in May of 2013. (Doc. 12, P. Re. in Opp. to Dis. at 7-8; Doc. 8, Amend. Compl. at ¶ 38). Finally, Palmer-Donavin alleges that it performed in that it continued to purchase Rheem

products and maintained adequate facilities to sell Rheem's products. (Doc. 8, Amend. Compl. at ¶¶ 15-16, 37).

It is true that the amended complaint is relatively broad in its allegations and does not descend to specifics like the sorts of goods to be purchased or the prices. (Doc. 8, Amend. Compl. *in passim*). It is likewise true that "[a]n enforceable contract in Ohio arises from a meeting of the minds, and 'must . . . be specific as to its essential terms, such as the identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term.'" *Scotts Co. v. Cent. Garden & Pet Co.*, 403 F.3d 781, 788 (6th Cir. 2005) (quoting *Alligood v. Proctor & Gamble Co.*, 594 N.E.2d 668, 669 (Ohio Ct. App. 1991)). However the amended complaint also alleges partial performance by both parties and a 40-year business relationship. Under the circumstances, (and given the lack of argument by either side that price or quality/quantity of goods were in dispute) it is reasonable to infer that there was a meeting of the minds as to the essential terms of the contract. Under the circumstances, and especially given the 40-year business relationship between the parties, these allegations are sufficient to state a cause of action for breach of an oral contract.[3] *See* 1 Ohio Jury Instr. CV 501.01; *see also, e.g.*, *Doner*, 649 N.E.2d at 44.

**D.     Count Three – Detrimental Reliance/Promissory Estoppel**

In order to prove promissory estoppel under Ohio law, a plaintiff must demonstrate the following elements: (1) a promise, clear and unambiguous in its terms; (2) reliance on the promise by the party to whom the promise is made; (3) such reliance must be reasonable and foreseeable; and (4) the party claiming estoppel must be injured by the reliance. *Bluegrass Ctr. v.*

---

[3] Rheem asserts a statute of frauds argument in support of dismissal of this claim. (Doc. 9, D. 2d. Mot. to Dis. at 9-11). However, taking the allegations at face value, the contract was to be of duration 1-year and thus the statute of frauds is inapplicable. *See* Ohio Rev. Code § 1335.05 (1976) (applying, *inter alia*, to contracts which cannot be performed within 1 year).

*U.S. Intec, Inc.*, 49 F. App'x 25, 31-32 (6th Cir. 2002) (citing *Weiper v. W.A. Hill & Assocs.*, 661 N.E.2d 796, 803 (Ohio Ct. App. 1995)).

At the time of the incident giving rise to this lawsuit, Palmer-Donavin and Rheem had been in business together for over 40 years. (Doc. 8, Amend. Compl. at ¶ 7). During the over-40-year relationship, Rheem assured Palmer-Donavin that their producer-distributor relationship would continue. *Id.* at ¶ 11. Relying upon these assurances, Palmer-Donavin took steps to boost sales of Rheem products and focus its distribution business more tightly on Rheem. *Id.* at ¶¶ 12, 17. Of particular note, in 2011, at Rheem's request, Palmer-Donavin discontinued distribution of a competing product line, ComfortStar, and became a single-line distributor for Rheem. *Id.* at ¶ 21. In 2011-12, at Rheem's request or with Rheem's approval, Palmer-Donavin hired a new GM for their HVAC (heating, ventilation, and air conditioning) division, enrolled its branch managers in industry-specific training, recruited additional sales personnel through a sale apprentice program, and took its entire sales team to Fort Smith, Arkansas for Rheem Master Track training. *Id.* at ¶¶ 13, 17.

In July, 2012, Joel Sack, territory representative for Rheem, specifically assured Matt Thompson, head of Palmer-Donavin's HVAC division, that Rheem was not terminating its relationship with Palmer-Donavin. *Id.* at ¶ 18. However, on January 10, 2013, just a month after developing and approving a distribution plan for the year 2013, Rheem informed Palmer-Donavin that it was being fired as a distributor. *Id.* at ¶ 27. As a result of becoming a single-line distributor and then losing that line, Palmer-Donavin has been forced to liquidate its HVAC division. *Id.* at ¶ 29.

Taking the allegations in the amended complaint as true, and drawing all reasonable inferences in favor of Palmer-Donavin, Plaintiff sufficiently states a claim for promissory

estoppel. Rheem promised Palmer-Donavin that it would continue to use Palmer-Donavin as a distributor. In reasonable reliance upon that promise, (and with Rheem's knowledge and agreement) Palmer-Donavin became a single-line distributor and took other steps to bind itself more closely to Rheem. Whereupon, Rheem terminated the long-standing relationship to Palmer-Donavin's cost.

**E.      Count Four – Equitable Estoppel**

Rheem moves to dismiss this count on the grounds that it is a defense, not a cause of action. (Doc. 9, D. 2d. Mot. to Dis. at 12). Other than asserting that promissory estoppel has equitable facets, Palmer-Donavin does not argue against this conclusion. (Doc. 12, P. Re. in Opp. to Dis. *in passim*). Accordingly, count four shall be dismissed.

**F.      Count Five – Fiduciary Duty**

"A fiduciary has been defined as a person having a duty, created by his undertaking, to act <u>primarily for the benefit of another</u> in matters connected with his undertaking." *Strock v. Pressnell*, 527 N.E.2d 1235, 1243 (Ohio 1988) (internal quotation marks omitted) (emphasis original); *accord Spalla v. Fransen*, 188 Ohio App. 3d 666, 2010-Ohio-3461, 936 N.E.2d 559, at ¶ 28. It has also been articulated "as a relationship in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Ed Schory & Sons v. Francis*, 662 N.E.2d 1074, 1081 (Ohio 1996) (internal quotation marks omitted). Though such relationships can arise through courses of conduct (rather than explicit designation), this case, even accepting all the allegations as truth, is not such a situation.

As a matter of Ohio law, fiduciary relationships do not generally arise between parties negotiating arm's-length commercial transactions. *Scotts Co., LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 739 (S.D. Ohio 2009) (Graham, J.). The relationship alleged in the amended

complaint, because of its lengthy history and semi-exclusive nature, is not the typical "arm's-length" transaction. However, it is certainly much closer to an arm's-length transaction than, for instance, a deal struck between father and son principals in a law firm. *Landskroner v. Landskroner*, 154 Ohio App. 3d 471, 2003-Ohio-5077, 797 N.E.2d 1002, at ¶¶ 32-33 (declining to find a fiduciary relationship existed between father and son after they ceased to be co-stockholders in the firm though they continued to have a business and familial relationship). Thus, the nature of the transaction weighs against finding a fiduciary relationship.

More importantly, Palmer-Donavin fails to allege that Rheem had a duty to act "<u>primarily for the benefit</u>" of Palmer-Donavin. *Strock*, 527 N.E.2d at 1243. Though a bank, for instance, lent money to hog farmers and furnished them with advice in "a congenial atmosphere and in a sincere effort to help the [hog farmer] prosper," the bank did not thereby become the fiduciary of the hog farmer. *Umbaugh Pole Bldg. Co. v. Scott*, 390 N.E.2d 320, 323 (Ohio 1979). The bank doubtless wished for the hogs' growth and the hog farmer's success (because through those objects would the loan be repaid). But "each [was ultimately] protecting his own interest" and thus, though the bank sought the good of both hogs and farmers, it was fiduciary of neither hogs nor farmers. *Id.* Here too, Rheem's success doubtless was linked to Palmer-Donavin's success (and vice-versa) but that allegation does not suffice to allege that Rheem had a duty to subordinate its own interests to Palmer-Donavin's interests or act "<u>primarily for the benefit</u>" of Palmer-Donavin. *Strock*, 527 N.E.2d at 1243. As that duty, to act for the good of another, is the essence of a fiduciary relationship, and as it is absent here, the Court concludes that the amended complaint does not allege a fiduciary duty.

There being no allegation that a fiduciary duty existed – none can have been violated. This count shall be dismissed.

### G. Count Six – Misrepresentation/Fraud in the Inducement

Fraud, under Ohio law is:

> (1) a representation (or concealment of a fact when there is a duty to disclose) (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance.

*Volbers-Klarich v. Middletown Mgmt.*, 125 Ohio St. 3d 494, 2010-Ohio-2057, 929 N.E.2d 434, at ¶ 27.

According to the allegations in the amended complaint, Rheem sought for Palmer-Donavin to become a single-line distributor of Rheem products. (Doc. 8, Amend. Compl. at ¶ 21). Throughout the relationship and as part of the inducement to Palmer-Donavin, Rheem assured Palmer-Donavin that the relationship between the two companies would continue. *Id.* at ¶¶ 11, 22. Rheem did, in fact, become a single-line distributor. *Id.* at ¶ 21. All the while, however, and unbeknownst to Palmer-Donavin, Rheem was betraying Palmer-Donavin to a competitor – arranging for Robertson Heating Supply to replace Palmer-Donavin and force the liquidation sale of its HVAC division. Once Rheem had successfully convinced Palmer-Donavin to become a single-line distributor, completely reliant upon Rheem, Rheem terminated its relationship with Palmer-Donavin. *Id.* at ¶¶ 22-24, 28-29. The result, as Rheem intended, was that Palmer-Donavin was replaced by Robertson and that Palmer-Donavin liquidated its HVAC division (which was, in turn, bought by none other than Robertson). *Id.*; (Doc. 12, P. Re. in Opp. to Dis. at 14).

These factual allegations line up well with the elements. (1) Rheem represented to Palmer-Donavin that the distributor-producer relationship between the two would continue. (2) This representation was material to Palmer-Donavin's decision to become and thereafter, to

remain, a single-line distributor. (3) During at least some of the times when Rheem delivered such assurances, Rheem was planning to discontinue the relationship. Thus, the representation was false.[4] (4) Rheem requested that Palmer-Donavin discontinue their other product lines. Thus, it is reasonable to infer that Rheem intended Palmer-Donavin to rely on its representation that it would not, after asking Palmer-Donavin to become a single-line distributor, cease dealing with Palmer-Donavin. (5) After over 40 years in business with Rheem, Palmer-Donavin was justified in relying upon Rheem's assurances that their long history together would continue and therefore justified in becoming, as Rheem had requested it do, a single-line distributor. (6) Based on Rheem's false representations that it intended to continue the relationship with Palmer-Donavin, Palmer-Donavin took steps to bind its fate more closely to Rheem and was thus greatly injured by Rheem's false representations when Rheem unexpectedly fired it in favor of its competitor, Robertson.

These allegations may be true, or they may not be. But at this stage of the case, they must be assumed to be true and, so assuming, the Court concludes that Palmer-Donavin has sufficiently alleged a cause of action for Fraud in the Inducement.

### H. Count Seven – Negligent Misrepresentation

> To be liable [for negligent misrepresentation,] the defendant must (1) supply false information; (2) for the guidance of others in their business transactions; (3) causing pecuniary loss to the plaintiff; (4) while the plaintiff justifiably relied upon the information; (5) and while the defendant failed to exercise reasonable care or competence in obtaining or communicating the information.

---

[4] "Generally, fraud is not predicated on a representation concerning a future event as such representation is more in the nature of a promise or contract or constitutes mere predictions or opinions about what the future may bring. However, a promise made with a present intention not to perform is a misrepresentation of an existing fact even if the promised performance is to occur in the future." *Yo-Can, Inc. v. Yogurt Exch.*, 149 Ohio App. 3d 513, 2002-Ohio-5194, 778 N.E.2d 80, at ¶ 43 (citations omitted) (citing *Link v. Leadworks Corp.*, 607 N.E.2d 1140, 1145 (Ohio Ct. App. 1992)).

13

*Picker Int'l v. Mayo Found.*, 6 F. Supp. 2d 685, 689 (N.D. Ohio 1998) (citing *Delman v. City of Cleveland Heights*, 534 N.E.2d 835, 838 (Ohio 1989); *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1269 (Ohio Ct. App. 1996)). However:

> "A core requirement in a claim for negligent misrepresentation is a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transaction." "This relationship occurs only in 'special' circumstances. Usually the defendant is a professional (e.g., an accountant) who is in the business of rendering opinions to others for their use in guiding their business, and the plaintiff is a member of a limited class. This 'special' relationship does not exist in ordinary business transactions."

*Ziegler v. Findlay Indus.*, 464 F. Supp. 2d 733, 738 (N.D. Ohio 2006) (quoting *Hayes v. Computer Assocs. Int'l Inc.*, No.: 03:02-cv-7452, 2003 U.S. Dist. LEXIS 10712 at *19 (N.D. Ohio June 24, 2003)); *see also Gutter v. Dow Jones, Inc.*, 490 N.E.2d 898, 900 (Ohio 1986); *Haddon View Inv. Co. v. Coopers & Lybrand*, 436 N.E.2d 212, 215 n.1 (Ohio 1982). "Those 'who are in the business of supplying information for the guidance of others typically include attorneys, surveyors, abstractors of title and banks dealing with non-depositors' checks.'" *Ziegler v. Findlay*, 464 F. Supp. 2d at 738 (quoting *Nichols v. Ryder Truck Rental*, No.: 65376, 1994 Ohio App. LEXIS 2697, *11-12 (June 23, 1994)).

The amended complaint does not allege, nor, based on the core facts of this case, could it cogently allege, that Rheem supplied information to Palmer-Donavin for guidance as part of a special relationship like that between client and accountant or client and attorney. Although 40 years of cooperation between two companies doubtless forges a special relationship of a sort, the relationship pled in this case is not the kind of relationship that is a necessary prerequisite of a claim for negligent misrepresentation. This cause of action shall be dismissed.

## IV. CONCLUSION

Rheem's second motion to dismiss (Doc. 9) is **GRANTED in part** and **DENIED in part** and Rheem' first motion to dismiss (Doc. 4) is **DENIED as moot**.

Counts 4, 5, and 7 of the amended complaint (Doc. 8) are dismissed.

The Clerk is directed to **REMOVE** documents 4 and 9 from the Court's pending motions list.

**IT IS SO ORDERED.**

          */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**